UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIEL T. SIGO,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH LEHMAN, et al.,<br><br>    Defendants. | No. CV-03-5094-CI<br><br>REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSAL |

BEFORE THE COURT on Report and Recommendation is Defendants' Motion for Summary Judgment dismissal, noted for hearing without oral argument on April 4, 2005. (Ct. Rec. 19.) Plaintiff is proceeding pro se; Assistant Attorney General Stephanie Weigand represents Defendants. The parties have not consented to proceed before a magistrate judge. Plaintiff was advised of the summary judgment requirements under *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999) (Ct. Rec. 13), and has responded to the Motion.

**CLAIMS**

Plaintiff, an inmate at the Washington State Penitentiary (WSP) asserts Defendants violated his federal constitutional rights under the First, Eighth and Fourteenth Amendments and that, as a result, he is entitled to compensatory and punitive damages, as well as

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 1

injunctive and declaratory relief, costs and attorney fees. Plaintiff alleges nine separate claims:

First, after being transferred to the intensive management unit (IMU) at WSP on February 3, 2003, and pursuant to WSP policy, Defendants subjected him to unreasonable levels of noise at all hours of the day and night until he left the unit on May 14, 2003.

Second, on December 18, 2002, while he was the subject of a Health Status Report (HSR) for extra pillows because he suffers from gastro-esophageal reflux disease (GERD), he was denied the extra pillows while housed in segregation and IMU units for 148 days. As a direct result, he suffered chronic and substantial pain.

Third, despite a recommendation by WSP health providers in February and March 2003, that he be provided physical therapy for a chronic shoulder pain, he was denied the treatment because of his placement in IMU, resulting in unnecessary pain and suffering for eight months.

Fourth, on February 9, 13, 16, 19, and 27, 2003, Plaintiff, while housed in segregation unit four, was sent outside for yard time without appropriate shoes and clothing for winter weather conditions, causing him unnecessary pain and suffering.

Fifth, on March 3, 2003, Plaintiff was placed in an IMU cell without running water for 36 days, denying him access to a regular source of water for drinking and brushing his teeth.

Sixth, from December 18, 2002, to August 14, 2003, Plaintiff was housed in segregation or IMU units with constant illumination causing headaches, stress, and sleep loss.

Seventh, on December 18, 2002, Plaintiff was infracted and found guilty of aggravated assault on another inmate without an

ability to present witnesses, witness' statements or evidence on his behalf. Although he asked for a copy of the transcript, none was provided. As a result, he was transferred to IMU and lost two and a half months of good time credits.

Eighth, on March 3, 2003, Plaintiff was transferred to IMU, but did not receive his legal papers until April 30, 2003. As a result, he missed a March 21, 2003, filing deadline in the Western District of Washington in Cause No. C-02-5605-FDB, a habeas action, resulting in dismissal of the action. While being transported to McNeill Island Corrections Center (MICC), his legal property was left on the chain bus and then lost; as a result, he was unable to appeal the dismissal of his federal habeas claim. Plaintiff contends the denial of access to the courts resulted in dismissal of his lawsuit and a 2.5 year difference in his release date.

Ninth, while housed in IMU from March 3 to March 8, 2003, and again from August 14 to 21, 2003,[1] Plaintiff was denied his medication resulting in heartburn, vomiting, pain and discomfort. He claims this denial was the result of policy decisions made by

---

[1] Based on other facts asserted in his deposition and other evidence of record, it appears Plaintiff was imprisoned at MICC after a transfer there in May 2003, and returned to WSP on August 21, 2003. (Ct. Rec. 4 at 12.) From August 14 to August 21, he was placed at the Washington Corrections Center at Monroe. (Ct. Rec. 22, Ex. 3, Att. A, Sigo Depo. at 60, l. 2.) To the extent he asserts a claim against DOC personnel at the WCC for failure to provide his medication, the more appropriate forum would be the United States District Court for the Western District of Washington.

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 3

1  Defendant Lehman.

2      Defendants move to dismiss, contending the claims are without
3  factual or legal support.

**SUMMARY JUDGMENT**

FED. R. CIV. P. 56(c) states a party is entitled to summary judgment in its favor, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The party opposing the motion must present facts in evidentiary form and cannot merely rest on the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Affidavits, depositions, answers to interrogatories and admissions are sufficient to raise a material question of fact. *Celotex*, 477 U.S. at 324. Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990). The court will examine the direct and circumstantial proof offered by the nonmoving party and the permissible inferences which may be drawn from such evidence. A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Electric Service*

*Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Triton Energy Corp v. Square D. Company*, 68 F.3d 1216 (9th Cir. 1995).

## 42 U.S.C. § 1983

To demonstrate a claim under 42 U.S.C. § 1983, Plaintiff must allege and prove (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). To hold a defendant liable for damages, the wrongdoer must personally cause the violation. *Leer*, 844 F.2d at 633. There is no respondeat superior liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, a supervisor is liable under § 1983 only if he/she "participated in or directed the violation, or knew of the violation and failed to prevent it." *Id*. If damages are sought, sweeping conclusory allegations against a prison official will not suffice; an inmate must set forth specific facts as to each individual defendant's participation. *Leer*, 844 F.2d at 634.

## UNDISPUTED FACTS

It is undisputed Plaintiff, in inmate currently housed at WSP, suffers from two chronic medical conditions: shoulder pain and GERD. (Ct. Rec. 22, Ex. 2, Fleck Decl.) On May 31, 2002, to ease the pain

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 5

while lying down, Plaintiff was issued an HSR permitting him two extra pillows. (Ct. Rec. 22, Ex. 2, Fleck Decl.)

On December 18, 2002, following a guilty finding for a disciplinary infraction charging aggravated assault on another inmate, Plaintiff was transferred from the medium security complex to unit 1, a close custody segregation unit. (Ct. Rec. 22, Ex. 4, Murphy Decl.) In a segregation unit, inmates remain in their cells all hours of the day except for one hour of yard time, five days per week; that time alternates between indoor and outdoor yard. Each time yard is offered, an inmate may decline to go. (Ct. Rec. 22, Ex. 4, Murphy Decl.) Coats are offered as the inmate exits the prison to the yard. (Ct. Rec. 22, Ex. 3, Att. A, Sigo Depo. at 27:4-19.)

On March 3, 2003, Plaintiff was transferred to IMU, the most secure unit at WSP. (Ct. Rec. 22, Ex. 1, att. at 4.) WSP inmates in IMU are issued two sheets and two blankets; pillows are not permitted for security reasons. (Ct. Rec. 22, Ex. 4, Murphy Decl.) In both the segregation units and IMU, a 15 watt bulb remains on at all times in each cell. (Ct. Rec. 22, Ex. 4, Murphy Decl.)

Throughout his incarceration, including his placement in IMU, Plaintiff sought and received acceptable medical care from WSP medical staff. (Ct. Rec. 22, Ex. 2; Ex. 3, Att. A, Sigo Depo. at 55:6-14.) There are no WSP medical records that indicate Plaintiff sought treatment for sleep deprivation, dehydration, or exposure.

On May 14, 2003, Plaintiff was transferred to MICC IMU and then re-assigned to the general population at WSP on August 14, 2003. He was not returned to WSP until August 21, 2003, due to vehicle problems. (Ct. Rec. 22, Ex. 1, Att. A at 4; Ex. 3 at 65.)

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 6

**CONDITIONS OF CONFINEMENT - CLAIMS ONE, FOUR, FIVE AND SIX**

Plaintiff asserts he was subjected to unconstitutional conditions of confinement pursuant to WSP policy and in violation of the Eighth Amendment. Those conditions included excessive noise (claim one), inadequate clothing and shoes for yard time (claim four), inadequate running water in his cell (claim five), and constant illumination (claim six). As a result, he further alleges he suffered injury to his health and welfare.

Defendants contend these claims must be dismissed because there are legitimate penological objectives underlying the policies involved and insufficient admissible evidence to create a material question of fact as to the allegedly unconstitutional conditions of confinement. Defendants assert the policies permitting the use of rubber mallets and constant illumination are necessary to maintain the security of the prison. Additionally, Defendants contend there is no admissible evidence Plaintiff was denied adequate clothing and shoes for outside activities or an adequate supply of water in his cell.

The Eighth Amendment proscribes cruel and unusual punishment. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). To establish an Eighth Amendment violation, a prisoner "must satisfy both the objective and subjective components of a two-part test." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002). First, there must be a demonstration the prison official deprived the prisoner of the "minimal civilized measure of life's necessities." *Id.* (citation omitted); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry. *Rhodes*, 452

U.S. at 347. Prison officials have a duty to ensure inmates are provided adequate shelter, food, clothing, sanitation, medical care, and that measures are taken to ensure personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

Second, a prisoner must also demonstrate the subjective component, that the prison official "acted with deliberate indifference." *Farmer*, at 832. A prison official acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002), *cert. denied*, 537 U.S. 1106 (2003). Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Farmer*, at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188 (citation omitted). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer,* 511 U.S. at 839.

Finally, in the Ninth Circuit, each unrelated condition that allegedly contributed to the violation of Eighth Amendment rights is considered separately, that is, "a number of unrelated conditions, each of which satisfy eighth amendment requirements, cannot in combination amount to an eighth amendment violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). However, related conditions may be combined in

determining whether there is a violation of the Eighth Amendment. "[R]elated conditions are those conditions that combine to deprive a prisoner of a discrete basic human need, [e.g.], food, clothing, shelter, sanitation, medical care and personal safety." *Id.* at 1107. Finally, "[p]rison administrators . . . should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Albers v. Whitley*, 475 U.S. 312, 321-322 (1986) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

1.  Use of Rubber Mallets and Constant Illumination[2]

Plaintiff contends the use of rubber mallets and constant illumination during the nighttime hours caused him sleep deprivation. Defendants present evidence the use of rubber mallets is necessary to maintain the security in the segregation and IMU units. They assert, following a 1997 escape by an inmate from WSP IMU, security was intensified to include the use of rubber mallets

---

[2]Although Plaintiff has couched these claims in terms of unconstitutional DOC or WSP policies, no evidence of such policies has been offered by either party. Generally, the constitutionality of prison policy is reviewed under *Turner v. Safley*, 482 U.S. 78 (1987). However, the *Turner* analysis does not apply to Eighth Amendment claims; those claims are reviewed under the *Rhodes* test of "unnecessary and wanton." *Hallett v. Morgan*, 296 F.3d at 747 n.7; *Jordan v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993).

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 9

to test the integrity of wall structures, 46 pipe chases,[3] shower, plumbing and light fixtures. (Ct. Rec. 22, Ex. 4, Amended Murphy Decl. at ¶¶ 12-17.) Security checks of the pipe chases are performed three times per day during every eight-hour shift and last for about one minute per area. Staff are instructed to "lightly tap" the pipe chases, doors and bars behind the walls, light fixtures, shower and plumbing outlets to determine whether they are structurally intact. (Ct. Rec. 22, Ex. 4, Amended Murphy Decl. at ¶ 13.) Security checks also are conducted in each IMU cell every 72 hours by "lightly tapping" the rubber mallet to check the integrity of the floors, ceiling, windows, lights, locks, beds, toilets, sinks, walls, wickets, and doors within a cell. This check lasts about two minutes and occurs between the hours of 6:00 a.m. and 10:00 p.m. (Ct. Rec. 22, Ex. 4, Amended Murphy Decl. at ¶ 14.) Security inspections also are performed before and after an inmate is placed in the day room for inside yard between the hours of 6:00 a.m. and 9:00 p.m. (Ct. Rec. 22, Ex. 4, Amended Murphy Decl. at ¶ 14.)

It appears from materials submitted by Plaintiff that WSP staff concede the use of the rubber mallets results in "loud banging" on metal fixtures. The continuous security checks are conducted on a 24 hour basis; the night shift also delivers mail and a variety of medical, legal, and hygiene supplies. Tier and wellness checks of

---

[3] "A pipe chase is a small, enclosed area behind the interior walls where water and plumbing maintenance can be accessed from a door on the outside of the IMU building." (Ct. Rec. 22, Amended Ex. 4, Murphy Decl. at ¶ 13.)

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 10

the inmates in their cells are conducted every half-hour, including the nighttime hours.  Notwithstanding these nighttime sleep disturbances, it was noted IMU inmates are free to sleep at any time. (Ct. Rec. 30, Ex. 8, Att. B., Level I response to grievance; Att. D., Level II response to grievance; Att. E, Murphy response to grievance.)

Despite some evidence Plaintiff's sleep during the nighttime hours in segregation and IMU was disturbed on a regular, continuing basis, there is no evidence he suffered injury, or that the disturbances were directed against him for the purpose of intentionally inflicting punishment on him or with deliberate indifference to his health and safety.  Despite his praise of medical treatment at WSP, there are no records he sought treatment during these months for sleep deprivation.  Thus, there is no evidence of injury to create a material question of fact. *T.W. Electric Service Inc.*, 809 F.2d at 630.

Defendants also move to dismiss Plaintiff's claim involving constant illumination. It is undisputed Plaintiff's cell in segregation and IMU was constantly illuminated with a 15 watt bulb. The lighting assists prison officials with checking on the health and safety of the inmate during the night. (Ct. Rec. 22, Amended Ex. 4, Murphy Decl. at ¶ 21.)  Plaintiff stated during his deposition that he has access to a dimmer switch to dim the light, and could reduce it to minimum wattage. (Ct. Rec. 22, Ex. 3, att. A, Sigo Depo. at 62:5-15.)

"There is no legitimate penological justification for requiring [inmates] to suffer physical and psychological harm by living in constant illumination. This practice is unconstitutional." *LeMaire*

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 11

*v. Maass*, 745 F. Supp. 623, 636 (D. Or. 1990), *vacated on other grounds*, 12 F.3d 1444, 1458-59 (9th Cir. 1993); *see, also, Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (large fluorescent lights directly in front of and behind cell with constant illumination and causing "grave sleeping problems" and other problems were unconstitutional). The length of time that a prisoner is subject to a condition of confinement is important to determining whether the condition is unconstitutional. *Hutto v. Finney*, 437 U.S. 678, 686 (1978). Here, 15 watt bulbs provide only minimal light and there is a legitimate penological purpose for the lighting, specifically maintaining the security of the inmates. (Ct. Rec. 22, Ex. 4 amended, Murphy Decl. ¶ 21.) Moreover, a low level, constant light is less disruptive than lighting operated with a switch. *Cole v. Lutscher*, ___ F.3d ___, No. 04-C-116-C, (W.D. Wa. filed March 15, 2005. Additionally, there is no evidence Plaintiff consulted medical personnel about sleep deprivation due to this constant illumination (Ct. Rec. 22, Ex. 2, Fleck Decl. at ¶ 6). There also is no evidence of subjective intent--that Defendants intentionally maintained the light with deliberate indifference to a risk of Plaintiff's health and safety. Plaintiff has not created a material question of fact as to this claim.

2. <u>Denial of Yard Clothing and Running Water</u>

Plaintiff asserts he was denied appropriate coats and shoes for exercise time in the outside yard during winter months and a dependable supply of running water in his cell. As noted previously, exercise and water are life necessities protected under the Eighth Amendment. *Toussaint,* 801 F.2d at 1007. It also is undisputed yard time outdoors was optional and Plaintiff, during

deposition testimony, admitted coats were normally available. (Ct. Rec. 22, Ex. 3, Att. A. Sigo Depo. 27:10-19.) It is also undisputed Plaintiff was provided a pair of thongs and socks for use outdoors. (Ct. Rec. 22, Ex. 3, Att. A. Sigo Depo. 27:23-25, 28:1-3.) There was evidence closed toed shoes were not available due to budget problems and hygiene issues, but solutions were being explored by DOC staff. (Ct. Rec. 30 at 112 (response to Level I grievance), 123 (response to Level II grievance).)

With respect to the lack of running water in his cell, there is a material question of fact whether there was running water in his cell. Plaintiff asserted there were empty cells and he could have been moved. (Ct. Rec. 22, Ex. 3, Att. A. Sigo Depo. 36:6-7.) Defendants contend Plaintiff was offered the chance to move, but turned it down. (Ct. Rec. 22, Amended Ex. 4, Murphy Decl. ¶ 20.) Moreover, although he orally complained regarding the water problem, he did not file anything in writing until his grievance on April 15, 2003. The repair was made the day before that after a repair request was made on April 11. (Ct. Rec. 30 at 172, 176, 180.) Additionally, at the same time, the policy for effecting repairs to the physical plant was revised and clearly defined for staff. (Ct. Rec. 30 at 174, response to Level II grievance.)

Notwithstanding, with respect to either access to outdoor clothing or running water, there is no evidence to create a material question of fact Plaintiff sought medical attention for injury occurring because of these deprivations (Ct. Rec. 22, Ex. 2, Fleck Decl. at ¶¶ 6, 11), or that Defendants' actions associated with this claim were intentionally done for the purpose of creating serious risk to Plaintiff's health and safety.

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 13

**CLAIMS TWO AND THREE - MEDICAL CARE**

Plaintiff contends while housed in IMU he was denied extra pillows as permitted under his HSR and physical therapy for his shoulder. "The unnecessary and wanton infliction of pain upon incarcerated individuals under color of law constitutes a violation of the Eighth Amendment." *McGuckin*, 974 F.2d at 1059. A violation of the Eighth Amendment occurs when prison officials are deliberately indifferent to a prisoner's medical needs. *Id.* Prison official acts with "deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety." *Gibson,* 290 F.3d at 1187.

Defendants aver the use of pillows in IMU is not authorized because they present a security risk (Ct. Rec. 30, Ex. 32, WSP Field Instruction 600.010), although other institutions do not have the same limitations. (Ct. Rec. 30, Ex. 28 at 76 (CBCC IMU Offender Guide indicating issuance of one pillow and one pillow case); Ex. 29, Stafford Creed IMU Offender Handbook (indicating issuance of one pillow and one pillow case); Ex. 30, MICC Field Instruction, III, Segregation (indicating issuance of one pillow and one pillow case and same for IMU).) Additionally, physical therapy is not available to inmates in WSP IMU because of security concerns; inmates must remain cuffed while outside their cell.

The use of two pillows was to alleviate Plaintiff's pain from GERD while lying down. It is undisputed that condition was well-controlled with medication and that the medication worked much better than use of the pillows. (Ct. Rec. 22, Ex. 3, Att. A, Sigo Dep. 109:22-23; 110:2-13.) Additionally, it is undisputed two blankets were issued to WSP IMU inmates, one of which could have

been used as a pillow.  (Ct. Rec. 22, Amended Ex. 4, Murphy Decl. at ¶ 18.)

Dr. Fleck averred physical therapy was only one of several treatments available for the shoulder pain.  (Ct. Rec. 22, Ex. 2, Fleck Decl. ¶ 7.)  WSP medical personnel recommended physical therapy for Plaintiff on March 19, 2002, but Plaintiff refused the treatment, as well as surgery.  (Ct. Rec. 22, Ex. 2, Fleck Decl. ¶ 7, 9.)  On April 7, 2003, Plaintiff was advised regarding strengthening exercises which inmates can do in their cells.  (Ct. Rec. 22, Ex. 2, Fleck Decl. ¶ 8.)  On May 12, 2003, a cortisone injection was recommended and Plaintiff agreed to that treatment.  (Ct. Rec. 22, Ex. 2, Fleck Decl. ¶ 9.) Plaintiff admitted that the shot was successful.  (Ct. Rec. 22, Ex. 3, Att. A, Sigo Dep. at 57:7-12.)

A difference of opinion about a course of medical treatment does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Plaintiff has not demonstrated sufficient evidence to raise a material question of fact that he suffered serious injury or risk of injury as a result of the denial of pillows or physical therapy.

## CLAIM SEVEN - DUE PROCESS

Plaintiff asserts in claim seven that he was denied due process at a disciplinary hearing and, as a result, lost over two months of good time credit.  The success of this claim would necessarily implicate the validity of the guilty finding as to the infraction and the legality of his extended incarceration in light of his loss of good time credits.  Until Plaintiff has provided this court with a state court finding that the infraction proceeding was

constitutionally invalid, he is foreclosed from pursuing a § 1983 action.  *Heck v. Humphrey,* 512 U.S. 477, 479 (1994)*; Edwards v. Balisok*, 520 U.S. 641, 645 (1997).  Thus, **IT IS RECOMMENDED** claim seven be **DISMISSED WITHOUT PREJUDICE**.

### CLAIM EIGHT - FIRST AMENDMENT ACCESS TO COURTS

Plaintiff contends he requested his legal papers from WSP officials on March 3, 2003, but did not receive them until April 30, 2003, well beyond his March deadline in the Western District of Washington.  Then, while being transported to MICC, his legal materials were left on the chain bus by Defendant Owens and later lost.  As a result, he was unable to appeal the denial of his habeas claim filed in the Western District of Washington.  He also asserts the denial of his habeas claim caused actual injury, including a 2.5 year difference in his release date.

Inmates have a First Amendment right to access the courts provided actual injury is shown.  *Lewis v. Casey*, 518 U.S. 343, 351-54 (1996).  Here, a Report and Recommendation was filed on February 21, 2003.  No objections were filed and the court adopted the Report and Recommendation on April 21, 2003. (Cause No. C-02-5605-FDB, Ct. Rec. 13, 15.)  All that remained to be done was to file a Notice of Appeal to the Ninth Circuit.

There is case law that states once a habeas petition reaches the court, the right of access is satisfied.  *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir. 1995), *cert. denied*, 918 U.S. 1033 (1996). Moreover, under the revised habeas rules appeal to the Ninth Circuit is not automatic, but is dependent on the district court's identification of issues that warrant appellate review.  The Report and Recommendation addressed claims challenging a 1992 decision by

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 16

the Indeterminate Sentencing Review Board to cancel the grant of parole after Plaintiff refused to sign parole documents, claims which the magistrate judge found to be unexhausted and procedurally defaulted. Plaintiff remained incarcerated on the underlying conviction, serving the maximum term on an escape conviction which expired on November 29, 1994. He currently is incarcerated on other subsequent charges and convictions.

Even assuming the loss of legal materials interfered with Plaintiff's access to the courts, he is unable to show injury. Because Plaintiff's application for habeas relief in the Western District of Washington was filed in June 2001, after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), any appeal to the Ninth Circuit would be governed by that act. 28 U.S.C. § 2253. Under AEDPA, the scope of review in a habeas case is limited to those issues specified in the Certificate of Appealability (COA). *Nardi v. Stewart*, 354 F.3d 1134, 1137 (9th Cir. 2004). A COA will be granted only if an applicant has made a "substantial showing" of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

Based on the Report and Recommendation in the habeas action, Plaintiff has not raised a material question of fact that he would have been granted a Certificate of Appealability, permitting him to proceed to the Ninth Circuit Court of Appeals. Jurists of reason would not find the district court's rulings as to any of the issues debatable. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Thus, **IT IS RECOMMENDED** claim eight be **DISMISSED WITH PREJUDICE.** Accordingly,

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 17

**IT IS RECOMMENDED:**

1. Claims one, four, five and six (Eighth Amendment conditions of confinement) be **DISMISSED WITH PREJUDICE**.

2. Claims two and three be **DISMISSED WITH PREJUDICE**.

3. Claim seven (denial of due process during infraction proceeding) be **DISMISSED WITHOUT PREJUDICE**.

4. Claim eight (access to courts) be **DISMISSED WITH PREJUDICE**.

5. Claim nine (denial of medication) be **DISMISSED WITHOUT PREJUDICE** for re-filing in the United States District Court for the Western District of Washington.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying any the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within ten (10) days after receipt of the objection. Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 18

judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 73; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to Plaintiff and counsel for Defendants and the referring district judge.

DATED May 2, 2005.

                    S/ CYNTHIA IMBROGNO
            UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT DISMISSAL - 19